PETITION POR RE-HEARING, BY
ISHAM TALBOT, ESQ.
The counsel for the appellees, impressed with the importance of the questions involved in the decision of this cause — questions not only affecting much of the real estate of the citizens of our country, the tenures of which, the peace and happiness of society require should be based, not only upon principles which will *42 bear the scrutiny of severe investigation, but which should be permanent and durable as the soil which they secure to its industrious cultivaters; but involving with these considerations, those of a still more exalted and delicate character, the true construction of an important article in the compact between this Commonwealth and that of our sister, Virginia, who has a right to expect and demand of us the fulfilment of the stipulations, agreeably to the spirit, as well as the letter of this important instrument.
These considerations have induced the undersigned counsel to ask of your Honors a careful revision of this opinion, and. with due deference, to point out what seems to them to be errors, either in the principles assumed by the court as the base of their arguments, or in the conclusions which they have drawn from the premises thus assumed.
And first, in the written opinion delivered by your Honors, it seems to be assumed and made a ground of argument in favor of the system of acts extending, from time to time, the right of the proprietors of entries to survey the same, that, at the period of the making of the complainant’s entry, there was no period limited by .the existing laws, within which he should cause a sur-, vey to be made thereon. The incorrectness of this assumption will be apparent, from an examination of the act of 1773, emphatically called the land law, by which it is expressly provided, that “every surveyor shall, at the time of making entries for persons not being inhabitants of his county, appoint a time for surveying their landof which time they are to be notified in a manner specified with much minuteness; and the act expressly enacts a forfeiture, in these strong and explicit terms: “And if the surveyor shall accordingly attend, and the party, or uome one for him, shall fail to appear at the time, with proper chain-carriers and a person to mark lines, if necessary, his entry shall become void, and the land thereafter subject, to the entry of any other person.,
It is further, in. the said act, expressly provided, “ that every chief surveyor shall proceed, with all practicable dispatch, to survey all lands entered for in his office.”
Can it be said, after an attentive examination, or even a hasi-/ glance at these strong and explicit provisions, *43 that no time for the execution of surveys on entries made in virtue of these enactions, was fixed or limited, or that a forfeiture was inflicted on the proprietors of such entries for a failure or omission to survey the same? The ' injunction on the chief surveyor, to survey every entry with all practicable dispatch, is too strong and emphatic, to leave room for inference that the legislature intended it might be disregarded with impunity; and the terms in which an entire forfeiture of the entry, on the failure of the party to attend the surveyor with proper chainmen and markers, on the publication of the prescribed notice, which the surveyor is enjoined in the most solemn terms to give to every owner who resides without his county, are believed to be ns strong and as explicit as the language could furnish».
Thus the law remained until the year If84, when the legislature so far changed the duty in relation to the execution of surveys, from the surveyor to the proprietor of the entry, that all entries, which.- had been previously made, were required-to be surveyed, and . the surveys returned, on or before the first day of February 1786, and all other entries within one year from ■ their respective dates.
Had this latter act remained in force, and its pro-, visions prolonged from time to time without essential variátion by the subsequent acts of the Virginia and Kentucky legislatures, until the passage of the act of 1797, as would; seem to have been the opinion of the court, from the course of reasoning they have employed, the conclusion to which they have, arrived, that no forfeiture could have accrued, in any case where the survey had in truth, been executed before the first day of October, in the year If 98, tbe period-to which the exe- . cution of surveys, was limited, by the act of 17.97, might have been warranted in this view, upon the admission of the constitutional validity of all those enaqtipns of the legislature of Kentucky.,
But the entire and total repeal of this act of 17.84, which is effected by the most explicit provision to that effect in the act of the succeeding session of 1785, exhibits an entirely different view of this subject, and if adverted to, or attentively considered by the court, in forming its opinion, must have led your Honors, as the undersigned counsel firmly believe, to a conclusion entirety opposite to that at which they have arrived. ,
*44 The act of 1785, on an attentive examination of its provisions, will be found not only to contain this explicit and unqualified repeal of the act of 1784, but a substantial re-euaction of the substantial provisions of the act of 1779 in relation to the execution of surveys, requiring from the surveyor similar notice to the party, of the time when he would proceed to execute his survey; and contains this provision: “ And the owners of entries already made, shall, on or before the said first day of January, (1787,) appoint some person within the county where the land lies, their agent or attorney, who shall give notice of such appointment to the surveyor, within one month thereafter, or, on failure thereof, his entry shall bexome. void."
This act of 1785 having provided no precise period for the execution of surveys by the surveyor on whom the duty of surveying is thereby devolved, but only a time for all proprietors of entries to appoint agents within the county, and to notify the surveyor of such appointment, was continued, and the period for the performance of the services just enumerated, by acta passed in-and in 1795; by the last of which acts, the period for the appointment of their agents, and notice thereof to the surveyor, was prolonged until the 1st day of January 1796, at which time it finally expired, and was never again.renewed. ‘
Now, is it not plain as demonstration, if any proposition can be so, that if, by the provisions of the act of 1795, the vital force of the entry is made to depend on the appointment ©fan agent within the county, on or before the first day of January 1787, and a notice thereof within one month thereafter, to the surveyor; and that, on a failure so to do, a forfeiture of the entry is inflicted, in the most explicit terms; and if it is this act, the provisions of which have been continued, and the time for the performance of the duties therein enjoined been prolonged from time to time until the first day of January 1796,\md if the act of 1784, on the provisions of which the opinion herein pronounced must rest for its support, was clearly and explicitly repealed by the act of- 1785, and thereby rendered incapable of prolongation, how can the expressions of an act passed in 1797, giving to the owners of entries the further time of ten months to survey the same, so revive the provisions of an act of 1784, as to redeem from forfeiture, *45 ¿nines, the proprietors of which bad previously, te wit, on the first day of January 1796, incurred that forfeiture, by the failure and omission to appoint their agents and give the notice so solemnly enjoined by the act of 1785, so as to divest the titles of the owners of the same, land by the most solemn and imposing title known to the laws of this or any other country, the grant of the Commonwealth?
..Although the conclusion to which the court are brought in this opinion, is that to which a hasty view of the various acts of the Virginia and Kentucky legis- . lafures.on this subject, from the incongruity of the provisions pf the acts of 1795 and 1797, giving further time to the owners of entries to survey the same, when in truth there was, at the time of those enactions, no law in force limiting any precise period within which the owners of entries should survey the same, may, at first.glance, appear the obvious and natural one; yet it is the firm conviction of your petitioners, that a more mature consideration, with a comprehensive view of the whole system of legislation on this subject, will result in a conclusion directly opposite.
If this view of the various provisions of the acts of assembly on this subject, and the conclusions endeavored to-be deduced, b,e correct, the consequent forfeiture or invalidity of the complainant’s entry, for omission to comply with the requisitions alluded to, is inevitable, unless he had alleged and shown that the proprietor of the entry under which he claims, was an inhabitant of the county in which the land was situated,"and had notified the surveyor thereof, or that he had, within the time limited, on or before the first day of January 1796, appointed an agent within the county,- and given the surveyor notice of such appointment.
But if we are mistaken in the view .which we have taken of these legislative enactions, and of the conclusions which we think properly deducible therefrom, it remains to enquire, whether the portions .of these enac-tions which are the work of the legislature of Ken- • tucky, are not within the inhibitions of the article of , the compact between the States of Kentucky and Virginia, in virtue and in conformity with the terms of which, the former was permitted by the latter to become a sovereign and independent State, arid this court, as one of its important organs, invested with power tp dc gic|e on this important question.
*46 This article of the compact substantially provides, that “ all private rights and interests in land, within the of the proposed State, derived from the laws of Virginia, shall remain valid and secure, and shall be determined by the laws now in force in this State.”
On the meaning of the expressions employed in this important and solemn instrument, in connexion with the intent and meaning of the sovereign parties thereto, the solution of this question must essentially and exclusively turn; and yet, as it would seem to the undersigned counsel for the petitioners, although the clause in the compact is recited in the opinion delivered herein, that a small portion of the argument is employed in endeavors to define the meaning or intent of the terms employed, or in ascertaining, from an examination of the language used by its framers, the true intent and meaning thereof, in relation to the important question under discussion, and to be solemnly and finally decided on.
In relation to the object intended to be attained by the proposition contained in this article in the compact, it would seem that there is no room or scope for a difference of opinion. It was the solicitude of a parent State, a parental government, to provide a guaranty and security, under the new sovereignty about to be erected, for the protection and security of the rights and interests in lands acquired by her citizens from a parent State, under the existing laws of that State; and the means provided for the security and permanence of the rights and interests thus derived, and then held under the laws of the parent State, should be held secure and protected by the laws from which they were derived, and by which they were created; not subject to the future legislation of the new or proposed State, the object or scope of which, in the varions fluctuations to b.g produced by the future interest,of the State, or thosé of individual claimants, well, or ill. understood, and honestly or dishonestly pursued, and which might be the result of mistaken or capricious views, the State of Virginia could neither foresee nor anticipate; but against the evils at least possible, which might result from the. exercise of the powers of legislation, Virginia meant to guard; not from motives of public policy or general; good, connected with the sovereign rights or interests of the State, as the court seem to suppose, as for the *47 preservation or protection of private and individual rights; for, to such only, the compact, in this article, is made to extend.
The court, in their opinion, seem to consider the act of the Virginia legislature of 1785, prescribing the duties of proprietors of entries in the appointment of agents within the counties in which the land entered for them is situated, and declaring that in the event of their failure to attend the surveyor with proper chain-men and markers, with a view to the execution of a survey, the entries should become void, and the land embraced by such entries become- liable to appropriation.by the holders of the warrants, as a law of forfeiture simply, and for a delinquency which formed no part of the terms on which the entries had been originally made; and that, therefore, it was only oh the part of the Virginia legislature before, and of that of Kern-tucky since the separation, in the exercise of a liberal and beneficent policy, to prolong, in favor of such owners, from time to time, the period’ within which those duties should be fulfilled, and thereby suspend the forfeiture which might otherwise accrue to the government.
The incorrectness of this view of these acts of the legislature, as applied to this and other cases similarly situated, will be rendered obvious, by the consideration that whenever the legislature of Kentucky interfered by the prolongation of the period given for the performance of these duties, by the laws of-Virginia as they were at the time of our separation,'by the supposed or pretended act of mercy to one citizen, by extending the time of surveying allowed him by the Virginia laws, that this act of liberality and mercy to the owner of an unsurveyed entry, operates asan act of injustice (if not of usurpation) on the owner of. an interfering and conflicting claim, who, previous to'the separation of this State from Virginia, had obtained from her a patent- for the land embraced in such unsurveyed entry, and who was, at the period of that event, the proprietor of the land by a perfectly consummated and completely valid title.
In what sense, therefore, can these acts of the Kentucky legislature be considered as the remission of forfeitures which had or might accrue to the Commonwealth, and over which they might exercise legitimate *48 controls Ift none, as your petitioners respectfully conceive.
The invalidity of the entry, resulting from the omission of the owner to comply with the existing regulations in relation to the execution of a survey thereon within the period ultimately fixed on by the provisions of the Virginia actá, in cases like the present^ can create, in no sense whatever, a forfeiture of the land embraced in such entry, to the government, which could create in the legislature a power of control, so as to remit entirely, or to postpone the forfeiture of such claim. The only correct result of such omission to survey in the period prescribed by law, is a merger of the previously existing right of the owner of such entry, in the paramount title of the elder patentee, holding the same by solemn grant from the Commonwealth of Virginia, and which it was the Obvious intention of this article of the compact to protect from the arbitrary and capricious legislation which might at some future period he attempted by the legislature of the then proposed State.
With this view of the presumed motives of the State ofVirginia, in proposing to the new or proposed State this article in the compact, with the scope and operation of the acts of the Kentucky legislature, which are supposed by the counsel to be in contravention with the true spirit}* as well as the letter of that instrument, we will advert for a moment to the expressions which it contains, to see if they import the inhibition of such laws as those complained of.
This instrument declares that “ all private rights and interests of land within the proposed State, shall remain valid and secure under the laws of the proposed State, and shall be determined by the laws now in force in this State.”
These comprehensive expressions, “ all rights and interests,” embracing not only the claim of the defendants here, who w'ere, at the separation from Virginia, patentees by absolute grant, and owners by the clearly valid legal title of the land in contest. How far and to what extent is the completely valid title guaranteed and secured by this provision in the compact, against either the claim of the Stale of Virginia itself, or of any individual holding a title derived from the authority of her laws? Fortunately, the very same ar- *49 &ele, in its preceding clause, furnishes evidence incon-irovertible, of the nature and extent of this guaranty, It is this, that when any controversy shall arise between conflicting-claims derived from the said laws of Virginia, they shall be determined by the laws now in force m ¿1lis Commonwealth; that is, the laws of Virginia in force at the period of the ratification of said compact, which is admitted to be at the session of the convention which adopted our constitution, adopting the said’compact as apart thereof, in the month of June 1792.
The controversy in the present case having arisen between the parties to the present suit,' both deriving title under the laws of Virginia, and both guaranteed by the same compact, by what laws shall the controversy be determined? The same clause-, contained in the very same compact-, furnishes the ready and unerring answer, that is, by the laws in force in Virginia at the pe* riod of the ratification of the said compact. On this the defendant relies as his shield and protection.
The complainants, for the effectuation of their claim and an essential link in their title, rely for their recovery on a survey made, not under or in conformity with the laws of Virginia in force at the adoption of this compact, but.on a law of Kentucky passed in the year 1-797; without the aid of which Purvey, and the act of assembly on which it is founded, it must be admitted by all, that his claim is a nullity, his entry having become invalid and void by a failure to comply with the laws of Virginia, in force at the adoption of the compact.
This mode of considering this important constitutional question, with an eye to the express letter, as well as the spirit and meaning of the compact, without which it would seem difficult, if not impracticable, to arrive at a correct result, it is respectfully conceived, is not that which has been pursued in support o.f the opinion delivered herein by this honorable court, although it is believed to be in entire harmony with that taken by this court in the case of Hoy's heirs against M'Murray, in which the Judges who then composed this tribunal, by a process of reasoning founded upon the compact itself, brief, although clear and luminous, in the humble opinion of your petitioners, arrived at once at the same eon-elusion at which your petitioners are arriving, the ear tire invalidity of the laws in question.
June 29,
Sharp and Talbot, for appellant; Daniel, Shortridge,. &c. for appellee.
The opinion in the case alluded to, first delivered, as your peütioners believe, is the first case in which this momentous question was ever presented before this tribunal for adjudication, and having been decided with due solemnity and deliberation, must still be considered as the settled and matured opinion of the court, although it was discovered, subsequent to the delivery of the opinion, that the cause having been dismissed in the court below, neither that nor any other opinion could be legally or properly entered in the case, and for that cause, and that alone, the opinion pronounced and entered on the record, was set aside. To this opinion then, thus maturely formed 'and solemnly expressed, although the entire right of a binding precedent cannot be claimed, yet to alb the respect and regard which talents, legal knowledge and judicial dignity can bestow on such opinion, it has an unquestioned claim.
The intimations contained in the opinion delivered in the present case, that the exposition of the compact which it adopts, has heretofore received the sanction of this court itself, or by the supreme court of the United States, are, with all due deference to the intimations herein intended to be conveyed, founded upon some misapprehension of the nature and intent of the principles supposed to be settled by those adjudications. In the case of Miller’s heirs against Stepp and others, decided by the. latter of those tribunals, it is confidently believed that this point was neither made by the pleading, touched upon by the counsel in the argument, nor adjudicated by the court in the opinion alluded to in the decree pronounced therein.
All which is respectfully submitted toyourhonors.
But the court, after consideration, overruled the motion, and adhered to the opinion delivered.